Nott, J.,
dissented, as follows:
I am not dissatisfied with the event of the motion in this case. After the case of Rutherford & M’G-owen,'[1] taken in connection with the opinion of our late brother Ci-ieves, who, it appears, concurred in opinion with those of the Court in that case, who looked' upon a ferryman as a common carrier, we ought, perhaps, to consider the question as settled : for although a majority of the Court, there, did not consider a ferrymhn in that character, yet they put his liability on a ground equally imperative. And if he must be liable, at all events, it is immaterial upon what principle that liability is fixed, the result is the same to him. Nevertheless, as the question has still been considered open for discussion, I will, in a few words, give the reasons on which I have, in both instances, differed in opinion from some of my brethren.
The general rule of law, with regard to bailees, is, that they are not liable for losses, except where they have been guilty of some neglect. With regard to common carriers, the rule is different. They are held liable, at all events, except for losses occasionéd by the act of God, or a public enemy. No force, however great, no accident, however inevitable no fraud, however beyond their control, will excuse them. But it is not pretended, that this is a rule of justice. It is a rigid, inflexible, rule of general policy or necessity, *founded on the supposed facility with which carriers may combine with robbers, or other dishonest persons to defraud their employers, who have not the means of detecting them. Jones on Bailment, 104-5. 1 D. & E. Forward v. Pittard. But the principle does not apply to ferrymen. The owner of the property is usually present, which precludes all danger of fraud. It is not alone from any assistance which it is supposed he may derive from the owner's presence, or from any control that the owner may exercise over *383 the property, but from the impossibility of his depriving him of it by any fraudulent means, that the ferryman is exempt from liability, The reason of the rule, therefore, ceasing to exist, the rule itself ought not to be applied.[1] And such have been the decisions of our Courts in other cases of carriers.[1] Boats injured by hidden snags in our rivers, against which no human foresight could guard, have been made an exception. The nature of the undertaking of a ferryman should, it would seem, entitle him to the same exceptions in cases obviously beyond his control. He is obliged to transport droves of horses, cattle, hogs, &c. Shall he be liable, if one leaps overboard and is drowned, or injures another by kicking or otherwise ? I can see no rule of justice or policy that requires it. Yet that will be the consequence of placing him upon the footing of a common carrier. I am, therefore, constrained to differ in opinion from a majority of the Court on that point.
Dunkin, for the motion. Hayne, Attorney-General, contra.
I think, however, there was pretty strong evidence of neglect, and am, satisfied that a new trial should be granted on that ground.
Johnson, J., concurred with Nott, J.

 1 vol. 17.

 2 Bail. 421; 5 Rich. 25.